**WESTERN POWER SPORTS, INC., an Idaho corporation, Plaintiff,**

v.

**POLARIS INDUSTRIES PARTNERS L.P., a limited partnership, Polaris Industries L.P., a limited partnership, Polaris Industries Associates L.P., a limited partnership, and Polaris Industries Capital Corporation, Defendants.**

**Civ. No. 88–1191.**

United States District Court, D. Idaho.

April 3, 1990.

MEMORANDUM DECISION

CALLISTER, Senior District Judge.

The Court has before it the motion for summary judgment filed by defendant Polaris Industries (Polaris). In reviewing this motion for summary judgment the Court must determine whether there exist any genuine issues of material fact. Fed.R. Civ.P. 56(c). The Court heard oral arguments on March 21, 1990, has reviewed the entire matter, and is prepared to submit its written findings.

The above-entitled matter originated when Polaris discontinued using Western Power Sports (WPS) as its distributor for Polaris snowmobiles and all-terrain vehicles (ATVs). WPS began selling Polaris snowmobiles in 1961 and sold them continuously, with the exception of one year, up until 1988. In 1985 Polaris, in order to keep its manufacturing plants in operation all year round, entered into the ATV market. Polaris used its current snowmobile dealers to distribute the ATVs. In fact, the snowmobile agreement and the ATV agreement were separate and distinct from each other and ran for a period of one year expiring on March 31st of each year unless renewed. Each year Polaris would approach WPS and attempt to find out how many snowmobiles and ATVs the distributor

would be able to sell. Snowmobile purchase orders were executed in March of each year and ATV orders were executed in the fall. In September of 1987 WPS, reluctantly, agreed to sign an order with Polaris for 825 1988 model Polaris ATVs. Around this same time the ATV market was becoming depressed due to national safety concerns. Due to the depressed market, WPS attempted to negotiate a reduction in the number of ATVs that it had contracted to purchase for the prior year. Eventually, Polaris refused to reduce the number and in March 1988 WPS told Polaris that it would not accept delivery of the 825 ATVs it had previously ordered. Shortly thereafter Polaris notified WPS on March 21, 1988, that it would not renew the ATV distributorship agreement or the snowmobile distributorship agreement. Polaris maintains that the reason the snowmobile distributorship agreement was not renewed is due to bad sales performance on the part of WPS.

WPS filed this lawsuit on the underlying basis that the snowmobile distributorship agreement was not renewed because of the problems with the acceptance of the ATVs under the ATV distributorship agreement. Plaintiff maintains that such a relationship involves unlawful tying in violation of the Sherman and Clayton Acts. The complaint alleges five causes of action: (1) violation of section 1 of the Sherman Act due to unlawful tying; (2) violation of section 3 of the Clayton Act due to unlawful tying; (3) violation of Idaho Code § 48–101 due to unlawful tying; (4) violation of Idaho Code § 48–104 where Polaris' cancelling of the agreements was for the purpose of driving the plaintiff out of the snowmobile business; and (5) commission of a malicious and tortious bad faith breach of an express or an implied covenant in the agreements. The Court will address each of these causes of action in turn.

The Court will first address plaintiff's alleged violation of section 1 of the Sherman Act and Idaho's state form thereof

under Idaho Code § 48–101.[1] Section 1 of the Sherman Act, 15 U.S.C.S. § 1, provides in part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. . . .

■ In order to establish a *per se* tying arrangement in violation of section 1 of the Sherman Act, the plaintiff must demonstrate the existence of three elements: (1) a tie-in between two distinct products or services; (2) sufficient economic power in the tying product market to impose significant restrictions in the tied product market; and (3) an effect on the non-insubstantial volume of commerce in the tied product market. *Mozart Co. v. Mercedes–Benz,* 833 F.2d 1342, 1345 (9th Cir.1987), *cert. denied,* 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988). As for the first element, the Court is convinced that there are two distinct products involved. The defendant, in its attempt to persuade the Court otherwise, maintains there is only one product, that being the Polaris franchise. The Court cannot accept defendant's position and there were separate and distinct agreements for the snowmobile distributorship as well as the ATV distributorship. The second part of the first element is that there must be a tie-in between the two products. The question of fact on this issue has been established by the letter from Polaris to WPS dated March 18, 1988 (Exhibit 14 attached to the Appendix and Memorandum of Law in Support of Motion for Summary Judgment filed January 31, 1990).

■ The second element the Court must review is whether there was sufficient economic power in the snowmobile agreement market to impose significant restrictions in the ATV agreement market. In reviewing whether or not there are genuine issues of material fact as to this issue, the Court must first determine what the relevant market is. The plaintiff maintains that the relevant market is the market for the

**1.** The Idaho Supreme Court has recognized that federal decisions offer persuasive guidance in interpreting and applying § 48–101. Since § 48–101 is patterned after section 1 of the Sherman Act, the Court will analyze such in light of analogous federal decision. *See Pope v. Intermountain Gas Co.,* 103 Idaho 217, 223, 646 P.2d 988, 994 (1982).

wholesaling of snowmobiles and ATVs, which, since Polaris is the only snowmobile manufacturer using distributors, gives them a 100% share of the market. The defendant on the other hand argues persuasively, and the Court adopts the position that the relevant market is the retail snowmobile market. *See Mozart Co.*, 833 F.2d at 1346–47.

In reviewing whether or not there was sufficient economic power here, it was helpful to look at the percentage of the market the parties had. This is exactly what the United States Supreme Court did in *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). In *Jefferson Parish* the Court held that 30% of the market was insufficient to meet the requirements of the second element for a *per se* tying arrangement. It appears here that Polaris had approximately 31% of the market in the retail snowmobile industry. Given the United States Supreme Court's findings, this Court holds that as a matter of law such a percentage of the market share does not constitute sufficient market power over the tying product. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).[2]

■ The third factor needed in order to find a *per se* tying violation is an effect on a non-insubstantial volume of commerce in the ATV product market. In determining this amount, the United States Supreme Court has stated that it should entail all sales covered by tying arrangements. *Fortner Enters. Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 502, 89 S.Ct. 1252, 1258, 22 L.Ed.2d 495 (1969). In *Fortner*, the United States Supreme Court found that $200,-000.00 was a substantial sum. In this case, although not precisely known, it appears that the amounts are much greater than $200,000.00. Overall, the Court does believe that plaintiff did meet the third element of the *per se* test.

■ In determining whether a *per se* tying arrangement is present, courts look to see whether or not force has been used. In *Jefferson Parish*, the United States Supreme Court stated:

> [W]hen a purchaser is "forced" to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed.

*Jefferson Parish*, 466 U.S. at 16, 104 S.Ct. at 1560. Here, since WPS could not have bought from another manufacturer, there is no adverse impact on competition. Plaintiff has stretched the use of the term "force." It is uncontradicted that WPS fiercely sought the ATV distributorship agreement and was awarded such. Likewise, it signed the sales contract ordering the 825 ATVs. Furthermore, cases cited by plaintiff stand for the proposition that the purchasers did not want the product at all and did not distinguish where a purchaser only wanted certain amounts of the product. Here, plaintiff was willing to accept 500 ATVs but did not want to accept the additional 325. Taken as a whole, the Court is unable to find force on the part of Polaris.

■ In order to prevail in the absence of a *per se* liability, plaintiff must demonstrate that the violation unreasonably restrained competition. *Jefferson Parish*, 466 U.S. at 29, 104 S.Ct. at 1567. It was interesting to note that although the courts recognize this as the "rule of reason," no cases have been found that have awarded the plaintiff a victory after a "rule of reason" analysis. After reviewing the record the Court is unable to find, even assuming a tie-in occurred, that such a tie-in unreasonably restrained the competition. This Court will not condemn the alleged tie-in as it finds its anti-competitive impact is outweighed by its contribution to efficiency, where it was efficient, at least at that time, for Polaris to distribute the ATVs through its snowmobile distributors.

**2.** Plaintiff has brought to the Court's attention the testimony of Dr. Edward Whitelaw as to his expert opinion concerning the relevant product market. The Court has reviewed the expert's testimony but finds that as a matter of law the relevant market is the retail snowmobile market.

In sum, the Court finds as a matter of law that the plaintiff has not demonstrated sufficient economic power on the part of the snowmobile product market to impose significant restrictions in the ATV product market by Polaris. In addition, it has also failed to demonstrate that the defendant unreasonably restrained competition. Given the Court's finding as to this issue, the Court is required to dismiss counts one and three.

The second count goes to the alleged violation of section 3 of the Clayton Act which also involves tying. To prevail on a Clayton Act section 3 theory, the plaintiff must show that the tie-in products are "goods, wares, merchandise, machinery, supplies, or other commodities." 15 U.S.C.S. § 14. The defendant maintains that the distributorship agreements relating to Polaris products were not goods, wares, merchandise, machinery or commodities and therefore section 3 is not applicable. The Court agrees with the defendant's position since the basis of the underlying lawsuit centers around two separate distributorship agreements. *Cf. Waldo v. North American Van Lines, Inc.*, 669 F.Supp. 722 (W.D.Pa.1987).

Originally, there were practical differences between a section 3 and a section 1 theory. However, as the Ninth Circuit Court of Appeals pointed out, the United States Supreme Court's analysis has suggested that the standards are virtually identical. *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1214 (9th Cir.1977), referring to *Fortner Enters. Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969). Under a section 3 theory, the plaintiff must establish that the effect of the tie-in "may be to substantially lessen competition." *Moore*, 550 F.2d at 1214. In addition, courts have held that forcing a dealer to accept a full line of products in order to retain a dealership violates anti-trust laws *only* if the effect of such forcing was to lessen substantially competition in any line of the commerce. *Pitchford v. PEPI, Inc.*, 531 F.2d 92 (3rd Cir.1975), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976). Here, the plaintiff did not demonstrate that the effect of the alleged tie-in substantially lessened competition and in its own review of the documents, the Court was also unable to find any evidence indicating this restriction of competition.

In sum, the Court finds that section 3 of the Clayton Act does not apply, and even if it did, the plaintiff would fail to meet the specific requirements. This requires the Court to dismiss count two of the complaint.

At the hearing on the motion for summary judgment, the plaintiff conceded that if defendant prevailed on the summary judgment motion as to the tying issues, remaining counts four and five would also fail. Since this Court finds that counts one, two and three fail, it will also dismiss counts four and five.